```
         UNITED STATES DISTRICT COURT
            DISTRICT OF MINNESOTA
          Civil No. 05-120(DSD/SRN)
```

Rodney P. Fischer,

       Plaintiff,

v.     **ORDER**

Andersen Corporation,

       Defendant.


    Judith K. Schermer, Esq., 10 South Fifth Street, Suite 700, Minneapolis, MN 55402, counsel for plaintiff.

    David M. Wilk, Esq. and Larson King, LLP, 30 East Seventh Street, Suite 2800, St. Paul, MN 55101, counsel for defendant.


This matter is before the court upon defendant's motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion.


**BACKGROUND**

This is an action under the Minnesota Human Rights Act ("MHRA")[1] and the Employee Retirement Income Security Act

---

[1] The MHRA provides that "[e]xcept when based on a bona fide occupational qualification, it is an unfair employment practice for an employer, because of race, color, creed, religion, national origin, sex, marital status, status with regard to public assistance, membership or activity in a local commission, disability, sexual orientation or age to ... discharge an
(continued...)

("ERISA").[2] Defendant Andersen Corporation ("Andersen") hired plaintiff Rodney P. Fischer in 1971 to work at its door production facility. On December 5, 2003, Fischer retired from his employment with Andersen before his full pension benefits vested. Fischer alleges that his early retirement was a result of constructive termination and unlawful interference with his retirement benefits.

During the relevant time period, Andersen provided employee retirement benefits under the Andersen Corporation Pension Plan ("pension plan"). (See Schermer Aff. Ex. 1.) Under the pension plan, normal retirement age is 65, but depending on years of service an employee can receive full pension benefits by age 62. Alternatively, an employee can receive reduced benefits and retire early after reaching age 55.

Throughout his employment, Fischer held various positions at Andersen's door plant. From early 1990 to his retirement in 2003, he held the position of Engineer I. Until 2002, Fischer received consistently positive job performance reviews, although a 2001 review contained suggestions for improvement in skills and communication. In March of 2002, Mike Midby became Fischer's

---

(...continued)
employee." Minn. Stat. § 363A.08, subd. 2(b).

[2] ERISA provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit] plan ...." 29 U.S.C. § 1140.

2

supervisor. Andersen alleges that before Midby assumed an engineering management role, the door plant had a poor reputation for delivering projects on time and on budget. Midby was therefore charged with improving the skills of the door plant engineers. By contrast, Fischer alleges that "the rumor was that Mike Midby was coming to Door Plant Engineering to start forcing out older engineers." (Fischer Aff. ¶ 35.)

Before Midby became Fischer's supervisor, Fischer had worked in an engineer support capacity. In the summer of 2002, Midby told Fischer that, in order to remain in an Engineer I position, he would have to start taking direct responsibility for projects. Fischer accepted this new responsibility. (Fischer Dep. at 67.) On January 22, 2003, Midby presented Fischer with a job review that indicated areas of unsatisfactory performance. (See Wilk Aff. Ex. 2 at 3-4.) Based on the review, Midby told Fischer that he could either move to a different position or start a Performance Improvement Plan ("PIP"). Under a PIP, an employee must demonstrate improvement in specific areas within thirty days. If the employee fails, he may be reassigned to a different position or terminated. If improvement is achieved, further improvement goals may be imposed under subsequent PIPs for up to sixty additional days.

After the meeting with Midby, Fischer complained to an Andersen human resource specialist, Bruce Lundeen. Fischer alleges

that he complained of age discrimination and a threat of termination, but Lundeen recalls only that Fischer was upset about the performance review and Midby's criticisms. (See Lundeen Dep. at 12-13.) On February 6, 2003, Fischer met with Midby and Jim Moulton, Midby's supervisor, to discuss his job performance. Fischer claims that, before the meeting, a co-worker had suggested that he could avoid the PIP process by telling Midby and Moulton when he plans to retire. Therefore, at the meeting, Fischer told Midby and Moulton that he would likely retire in August 2003 and certainly by December 31, 2003. (Fischer Dep. at 109-10.)

In light of Fischer's early retirement plans, Midby and Moulton agreed that it did not make sense to start the PIP process. Rather, Fischer would make improvements in the required areas without formal oversight and would receive a PIP only if he delayed retirement beyond August. (See Wilk Aff. Ex. 14.) Fischer alleges that during the meeting Midby admitted to proposing the PIP process in order to force Fischer to offer a retirement date.[3] (Fischer Aff. ¶ 49.) Nevertheless, Fischer agrees that it was fair of Midby and Moulton to request that he improve his work performance. (Fischer Dep. at 101.)

---

[3] Fischer also contends that in early 2003 Midby made other references to Fischer's retirement, including inquiries into his plans, referring to his fifty-fifth birthday as the "big day," and requesting two months' notice of his retirement date.

4

On May 2, 2003, Midby requested a meeting with Fischer. The parties agree that Midby discussed Fischer's continuing lack of performance and that a PIP would likely be imposed. Fischer claims that Midby threatened to impose a PIP if Fischer did not retire in August. (Fischer Aff. ¶ 53.) By contrast, Midby's notes from the meeting indicate that he focused on Fischer's performance and discussed imposing a PIP despite Fischer's retirement plans. (See Wilk Aff. Ex. 16.) After the meeting, Midby decided that a PIP would not be effective in light of Fischer's attitude and disagreement concerning his work duties and responsibilities. Instead, Midby recommended to Andersen that Fischer be given the option of immediate retirement or termination. (Id. at 3.)

Andersen did not follow Midby's recommendation. On June 9, 2003, Midby and Moulton met with Fischer to present a PIP. (See id. Ex. 19.) The PIP set forth specific areas for Fischer to improve on within thirty days, after which they would meet again to discuss his performance. It is undisputed that the objectives set forth in the PIP were reasonable.[4] (Fischer Dep. at 136.) After the meeting, Fischer felt ill and decided to take the rest of the

---

[4] In his affidavit, Fischer alleges that the PIP set forth impossible demands. (See Fischer Aff. ¶ 68.) However, the affidavit fails to create a factual issue because it inexplicably conflicts with his deposition testimony that the PIP objectives were reasonable. (Compare id. with Fischer Dep. at 136); see Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365 (8th Cir. 1983). Therefore, the court will disregard Fischer's affidavit insofar as it conflicts with his testimony.

day off.  He was later treated by a physician and placed on short-term disability.  He never returned to work at Andersen, but rather retired on December 5, 2003.  He decided to retire at that time in order to retain his existing health plan.  (<u>See</u> Fischer Dep. at 58.)  Because he retired early, Fischer now receives approximately seventy percent of his full retirement benefits.

Plaintiff, age 55 at the time of his retirement, filed a charge of age discrimination and retaliation with the Equal Employment Opportunity Commission on October 28, 2004, and with the Minnesota Department of Human Rights on November 12, 2004.  (<u>See</u> Wilk Aff. Exs. 5, 7.)  On January 20, 2005, plaintiff commenced this lawsuit, alleging unlawful age discrimination and retaliation in violation of the MHRA and unlawful interference with his rights to full pension benefits in violation of ERISA.  Defendant now moves for summary judgment on all claims.

## DISCUSSION

### I.   ERISA Claim - Failure to Disclose

In his memorandum in opposition to Andersen's motion for summary judgment, Fischer contends that Andersen failed to disclose pension plan information to him as required under the Act. Andersen responds that Fischer cannot assert a failure to disclose claim because he did not plead such a claim in his complaint.  To adequately plead a claim, a plaintiff need only set forth "a short

6

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The function of notice pleading is to provide the defendant "fair notice of the nature and basis or grounds for a claim." Oglala Sioux Tribe of Indians v. Andrus, 603 F.2d 707, 714 (8th Cir. 1979). Although the pleading requirements establish a low threshold, they do not permit parties to manufacture claims for the purpose of avoiding summary judgment. N. States Power Co. v. Fed. Transit Admin., 358 F.3d 1050, 1057 (8th Cir. 2004).

Here, Fischer's complaint does not set forth any statement of a claim related to Andersen's alleged failure to disclose pension plan information. Further, the complaint does not contain any allegations that would support or even suggest such a claim. For these reasons, Andersen had no notice of the nature, basis or grounds for a failure to disclose claim.

Fischer cites Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993), and argues that an ERISA claim for interference with benefits may encompass or include a claim for failure to disclose plan information. However, the ERISA claim in Hazen Paper involved only alleged interference with benefits and therefore does not support plaintiff's argument. See 507 U.S. at 612. Moreover, contrary to Fischer's argument, each ERISA claim must meet the pleading requirements of Rule 8(a). See Atkins v. Northwest Airlines, Inc., 967 F.2d 1197, 1203 (8th Cir. 1992) (affirming dismissal of ERISA

claim for failure to specify basis of the claim, while addressing other ERISA claims on the merits). For these reasons, the court rejects Fischer's argument.

Based on the statements and allegations set forth in the complaint, the court finds that Fischer has not pleaded an ERISA claim for failure to disclose pension plan information. Therefore, his belated arguments with respect to such a claim cannot avoid summary judgment.

## II.  Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. See id. at 255. The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**III.  MHRA Claims**

Andersen argues that Fischer's MHRA claims of age discrimination and retaliation must fail because (1) he did not comply with procedural requirements for bringing such claims, (2) the claims are barred by the statute of limitations and (3) the claims fail on the merits. Because Fischer has not responded to Andersen's arguments, the court finds that Fischer has abandoned his MHRA claims. Therefore, summary judgment in favor of Andersen on Fischer's MHRA claims is warranted.

**IV.  ERISA Claim - Interference with Benefits**

As pleaded in his complaint, Fischer claims that Andersen unlawfully interfered with his right to receive full pension benefits by forcing him to retire early. Section 1140 of ERISA prohibits employers from discriminating against employees for the

9

purpose of interfering with the attainment of benefits under an employee benefit plan. See 29 U.S.C. § 1140. The court analyzes alleged violations of § 1140 under the McDonnell Douglas burden-shifting framework. See McDonnell Douglas v. Green, 411 U.S. 792 (1973); Register v. Honeywell Fed. Mfg. & Techs., LLC, 397 F.3d 1130, 1137 (8th Cir. 2005). First, plaintiff must establish a prima facie case of interference with benefits. See Register, 397 F.3d at 1137. If plaintiff succeeds, the burden of production shifts to defendant to articulate a legitimate, non-discriminatory reason for its conduct. Id. If defendant offers such a reason, plaintiff must then demonstrate that the reason is really a pretext for unlawful interference. See id.

### A.  Plaintiff's Prima Facie Case

To establish a prima facie case of interference with prospective benefits, a plaintiff must show (1) an adverse employment action by the defendant, (2) that he was likely to receive future benefits and (3) a causal connection between the adverse action and the likelihood of future benefits. Kinkead v. Southwestern Bell Tel. Co., 49 F.3d 454, 457 (8th Cir. 1995). An adverse employment action includes constructive discharge, which occurs when an employer deliberately creates intolerable working conditions in order to force an employee to quit his job. Bergstrom-Ek v. Best Oil Co., 153 F.3d 851, 858 (8th Cir. 1998). Imposing a "performance improvement plan" on an employee does not

alone constitute constructive discharge. See Givens v. Cingular Wireless, 396 F.3d 998, 998-99 (8th Cir. 2005). As to causation, a plaintiff must show that the employer's adverse employment action was motivated by a specific intent to interfere with the plaintiff's future entitlement to benefits. See Koons v. Aventis Pharms., Inc., 367 F.3d 768, 777 (8th Cir. 2004); Kinkead, 49 F.3d at 457.

Here, the court finds that Fischer has failed to meet his prima facie burden as to at least two elements. First, Fischer has not shown an adverse employment action by Andersen. Rather, Fischer voluntarily retired based on his already existing retirement plans and an impending health plan change, which were reasons unrelated to his claims of interference. Moreover, Fischer was not subjected to intolerable work conditions. At most, he received a poor performance review in March of 2003 and a PIP in June of 2003. Such actions do not support a claim of constructive discharge. See Givens, 396 F.3d at 998-99.

Second, even if Fischer could show an adverse employment action, he has failed to demonstrate that such an action was motivated by Andersen's desire to interfere with his right to pension benefits. Midby first discussed performance issues with Fischer months before he was eligible for early retirement and approximately one year before Fischer actually retired. Midby and Moulton apparently considered Fischer's early retirement option as

one way to deal with the performance issues, but that fact does not support an inference that they or Andersen intended to interfere with potential benefits Fischer could receive many years later. Fischer has pointed to no evidence that Midby or Moulton even considered such future benefits, much less intended to interfere with them.

Plaintiff argues that Andersen has a demonstrated pattern and practice of forcing employees to retire early, pointing to evidence that employees over the age of forty usually receive PIPs and that very few employees retire with full benefits. However, as to Andersen giving PIPs to older employees, Fischer confuses his ERISA claim with an age discrimination claim. The alleged targeting of employees over the age of forty may support an age discrimination claim but does not indicate interference with pension benefits, particularly when eligibility for such benefits does not occur until age fifty-five. Cf. Hazen Paper, 507 U.S. at 611-12 ("Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other ... .").

As to retirement trends, Fischer points to the fact that between 1998 and 2005 all engineers at the door plant facility retired early, that is, without full pension benefits. The court finds that such evidence does not suffice to make a prima facie showing of causation. In particular, early retirement trends alone do not even remotely indicate that an adverse employment action was

motivated by a specific intent on the part of the employer to interfere with pension benefits.  For these reasons, Fischer's arguments must fail.

Because Fischer has not met his prima facie burden, summary judgment in favor of Andersen on Fischer's ERISA claim is warranted.

### B.   Defendant's Legitimate, Non-discriminatory Reasons

Assuming, however, that Fischer could establish a prima facie case, Andersen has met its burden to articulate a legitimate, non-discriminatory reason for Fischer's alleged constructive termination.  See Register, 397 F.3d at 1137.  "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'"  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).

Presenting evidence of Fischer's failure to take responsibility for projects and to adapt to new job duties, Andersen asserts that Fischer received a negative performance review and was placed on a PIP because he performed poorly.  Poor job performance is, of course, a legitimate, non-discriminatory reason for adverse employment action.  See Fischer v. Pharmacia & Upjohn, 225 F.3d 915, 921 (8th Cir. 2000).

### C.   Evidence of Pretext

Accordingly, the burden would shift back to Fischer to prove that the proffered reason was not the true reason for the employment action, but rather that interference with his rights to benefits was. See Regel v. K-Mart Corp., 190 F.3d 876, 881 (8th Cir. 1999). For example, a strong record of positive performance reviews may create an inference of pretext for sudden negative reviews. Turner v. Gonzales, 421 F.3d 688, 698 (8th Cir. 2005).

Fischer contends that his record of positive performance reviews spanning thirty years creates an inference of pretext for the negative reviews received from Midby. It is true that Fischer received largely positive reviews for most of his career. However, areas of improvement were also identified before Midby became Fischer's supervisor. Further, Fischer assumed new job responsibilities in 2002 that were the focus of the negative reviews.[5] For these reasons, the court finds that the negative reviews do not create an inference of pretext. Because Fischer failed to present evidence of pretext, summary judgment is appropriate even if he had made a prima facie showing of unlawful interference with his right to benefits.

---

[5] To the extent that Fischer points to negative performance reviews of his co-workers, he has failed to demonstrate any connection between such reviews and an alleged interference with the right to future benefits.

14

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 10] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  April 6, 2006

                                s/David S. Doty
                                David S. Doty, Judge
                                United States District Court